IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION


COMMUNICATIONS WORKERS
OF AMERICA, AFL-CIO, CLC,
DYLAN R. OWENS, and MARK A.
WARME,
          **Plaintiffs,**


v.                                          **CASE No.**

DONALD RUBOTTOM, in his official
Capacity as Chair of the Florida Public
Employees Relations Commission, JEFF
AARON, in his official capacity as
commissioner of the Florida Public
Employees Relations Commission,
MICHAEL SASSO, in his official capacity
as commissioner of the Florida Public
Employees Relations Commission, and
PALM BEACH COUNTY, FL,

          Defendants.


## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>


Plaintiffs COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,

CLC (hereinafter CWA), DYLAN R. OWENS and MARK A. WARME complain

against the Defendants as follows:

## I.    INTRODUCTION:

1.     The United States Supreme Court has long recognized that membership and participation in the activities of a labor organization are protected under the Frist Amendment. The individual plaintiffs and their Unions challenge provisions of Florida Senate Bill 256  (hereinafter "SB 256") that (i) unconstitutionally burden their First Amendment rights of free speech and association, (ii) unconstitutionally discriminate against them in violation of the constitution's guarantee of Equal Protection, (iii) deprive them of their Due Process rights to be free from arbitrary governmental action and/or (iv) impair existing contractual obligations in violation of Article I, Section 10 of the United States Constitution.

2.     SB 256 imposes heavy  and unconstitutional burdens on labor unions and their members subject to its provisions. Section 1 amends Fla. Stat. § 447.301 to impose a requirement as a condition of membership that "a public employee who desires to be a member of an employee organization must sign and date a membership form, as prescribed by the commission with the bargaining agent." Section 1 impermissibly dictates the conditions of membership in an organization protected under the First Amendment.

3.     Section 1 further requires the mandatory membership form to contain a "right to work" statement in 14-point type that not only mischaracterizes a public employee's rights under Florida law but also compels covered labor organizations

to include a statement in a membership form that the Unions and their members disagree with as a political and policy matter.

4.      Section 3 of SB 256 amends Fla. Stat. § 447.303 to prohibit members of covered labor organization from having voluntary membership dues deducted from their salaries even though Florida law allows voluntary payroll deductions for exempt labor organizations and other charitable organizations.   Though the constitution does not mandate that a public employer offer this benefit to a labor organization, it prohibits public employer's from denying a benefit simply because it disfavors the organization's advocacy and/or seeks to discourage union membership. Section 3 was clearly aimed at denying covered labor organization's a benefit because the Florida legislature and the Governor harbored animus against the covered labor organizations and/or sought to discourage union membership. The senator who filed the bill that became SB 256 pejoratively referred to union leaders as "union bosses", and had previously sponsored a bill to outlaw the Democratic party which strongly supports the labor movement.

5.      Section 3 of SB 256 further impairs contracts that public employer defendant entered into with CWA. These contracts which have not expired provide for  voluntary payroll dues deduction. Likewise, SB 256 impairs the voluntary agreements that CWA entered into with its  members for purpose of financially supporting the work of these labor organizations.

6.      Section 4 of SB 256 amends Fla. Stat. § 447.305 to impose onerous annual disclosure requirements on covered labor organizations which must accompany an annual application for renewal of registration. Section 4 punishes members and their unions with immediate decertification if a union cannot fulfill requirements imposed on the  annual registration audited financial statements, the number of dues paying bargaining unit employees and the number that are not paying dues.  Section 4 further requires a union to undergo an election to determine whether it can continue to act as the certified bargaining representative if its mandatory disclosures show that fewer than 60 percent of the employees it represents pay dues to the union.

7.      Section 4 also requires a union to provide a public employer with a copy of the application for renewal and grants a public employer or bargaining unit employee standing to challenge a union's disclosure if it simply believes that the application is inaccurate.

8.      The amendments to Florida's Public Employees Relations Act enacted by SB 256 cannot survive constitutional scrutiny.  These amendments were adopted to burden and discourage membership in disfavored unions.  There is no compelling governmental interest in dictating the terms of membership in an organization that enjoys First Amendment protection.  Nor is there any compelling governmental interest in denying disfavored labor unions a benefit granted to exempt labor union

and other favored charitable organizations. The imposition of the new disclosure requirements that must accompany the annual application for registration, granting public employers standing to challenge an application and subjecting unions to decertification elections without a showing of a loss of majority support are provisions, among others, clearly designed to cripple disfavored labor unions because of their advocacy for causes that a majority of the Florida Legislature and the Governor's office oppose.

## II.    JURISDICTION AND VENUE

9.    Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988. Accordingly, this court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1342(a)(3).

10.    Venue in the Southern District of Florida is appropriate because all the defendants conduct business in this judicial district and all of the individual Plaintiffs resided in this judicial district.

### III.    PARTIES

11.     Plaintiff Communications Workers of America, AFL-CIO, CLC is a labor organization that represents both public and private sector employees.  CWA is a voluntary membership organization that, in addition to representing employees for purposes of collective bargaining, also engages in advocacy for public policies and legislation to protect the interests of workers and their families. CWA opposes right to work legislation. Through its affiliated Local 3181,  CWA has entered into a collective bargaining agreement with the Defendant Palm Beach County.

12.     Plaintiff Dylan Owens is an employee of Palm Beach County and resided in Palm Beach County.   He is a member of a bargaining unit represented by CWA and Local 3181.  Mr. Owens is also a member of  CWA and Local 3181. Plaintiff Owens opposes right to work legislation.

13.     Plaintiff Mark Warme is an employee of Palm Beach County and resided in Palm Beach County.  He is member of a bargaining unit represented by CWA and Local 3181.  He is a member of  CWA and Local 3181.  Plaintiff Warme opposes right to work legislation.

14.     Defendant Donald Rubottom serves as the chair and chief executive and administrative office of PERC, which has the authority to implement and enforce the PERA provisions challenged in this action. Chair Rubottom is sued in his official capacity.

15.     Defendant Jeff Aaron serves as a commissioner of PERC, which has the authority to implement and enforce the PERA provisions challenged in this action. Commissioner Aaron is sued in his official capacity.

16.     Defendant Michael Sasso serves as a commissioner of PERC, which has the authority to implement and enforce the PERA provisions challenged in this action. Commissioner Sasso is sued in his official capacity.

17.     The Defendant Palm Beach County is a governmental entity established by Florida's legislature in 1909. The County is a party to a collective bargaining agreement with  CWA.

### IV.   FACTUAL ALLEGATIONS

**A.     Collective Bargaining Relationship Between Union Plaintiffs and Defendant Public Employers.**

18.     CWA and Palm Beach County (hereinafter the "County") are parties to an existing collective bargaining agreement that covers a non-supervisory unit of employees (hereinafter "Bargaining Unit"). The CBA covering the Bargaining Unit expires on September 30, 2024.

20.     CWA has represented the Bargaining Unit since May 12, 1981.  This unit has approximately twelve hundred (1,200) bargaining unit members.  Plaintiffs Owens and Warme are members of the Bargaining Unit.

21.     Article 2.1 of the CBA provides in relevant part that "employees in the bargaining unit shall have the right to form, join and participate in, or refrain from forming, joining or participating in the Union.  Neither the County nor the Union will discriminate against any employee with regard thereto."

22.     Article 3.1 of CBA provides that the County will make payroll deductions of Union dues when authorized by the employee on a form certified to the County Secretary-Treasurer of the Union and to pay over to the Secretary-Treasurer of the Union any amounts so deducted.

23.     Article 3.2 of the CBA provides for employee authorization of payroll deductions of union dues. It provides in relevant part that an employee may submit a written request to revoke a dues deduction authorization which shall be effective within thirty (30) days of receipt by the County Payroll Supervisor and the Local Union President.

24.     The CBA also incorporates the dues authorization and union membership form that bargaining unit employees desiring union membership and the deduction of dues from their paychecks must complete and returned to the Union. The membership application provides that an employee requesting and accepting membership in the Communication Workers of America "accept[s] all rights, privileges, benefits and responsibility outlined in the constitution and by-laws of the union." (brackets added)

8

25.     Article 17.3 of the CBA provides that the agreement may be amended "by mutual agreement of the parties but any amendment must be in writing and signed by duly authorized representatives of the parties before it will be effective."

26.      CWA has not consented to an amendment of the CBA that allows the County to stop dues deduction and/or allows the County to accept a membership or dues authorization form other than the form incorporated into the CBA.

27.     As a result of the enactment of SB 256, the County has stopped deducting and remitting Union dues.

28.     As a result of the enactment of SB 256, the County has stopped recognizing the membership application form incorporated into the CBA.

**B.     Individual Plaintiffs' Membership in  CWA.**

29.     Prior to enactment of SB 256, Plaintiff Dylan Owens voluntarily joined CWA and Local 3181.  He signed a membership authorization card that the CWA and its membership had approved.  Owens voluntarily agreed to the terms set forth in the membership authorization card.   The membership card he signed did not include any reference to Florida's "right to work" statute.

30.     Plaintiff Owens voluntarily joined CWA because he supports  CWA's agenda and believes in collective bargaining as the best way for employees to improve their working conditions.  Owens also believes that all employees in a

bargaining unit that benefit from collective bargaining should financially support the Union and its members.

31.   At the time he joined  CWA and Local 3181, Owens understood that membership in the Union was not a condition of employment and that he did not have to join or pay dues to remain employed.

32.   Prior to enactment of SB 256, Plaintiff Warme joined  CWA because he supports  CWA's agenda and believes in collective bargaining as the best way for employees to improve their working conditions.  Warme also believes that all employees in a bargaining unit that benefit from collective bargaining should financially support the union and its members.

33.   At the time he joined  CWA and Local 3181, Warme understood that membership in the Union was not a condition of employment and that he did not have to join or pay dues to remain employed.

**C.   SB 256's Amendments to Florida's Public Employees Relations Act.**

34.   Since 1968, Article I, § 6 of the Florida Constitution guarantees public employees the right "by and through a labor organization, to bargain collectively" with the proviso that "public employees shall not have the right to strike."  The Florida Legislature enacted that Public Employees Relations Act (PERA) to

implement Article I, § 6.   PERA expressly protects that rights of public employees to form, join, participate in and be represented by a labor organization of their choosing.  Specifically, PERA requires certification of a labor organization as the bargaining representative of an appropriate bargaining unit if fifty-percent (50%) plus one of the employees in the unit vote in favor of union representation.

35.    SB 256's amendments to PERA cover labor organizations representing public employees and teachers but exempts public sector unions representing bargaining units with law enforcement officers, correctional officers, correctional probation officers and firefighters, as defined in Fla. Stat. §§ 943.10 and 633.102. SB 256 thus creates two classes of unions and public employees, a favored class of unions and employees working in law enforcement and firefighters and a disfavored class of all other public sector employees.

36.    The disfavored unions and their members, including the individual plaintiffs, are subject to three onerous restrictions and implementing regulations: (1) a requirement that the unions use and members execute a membership form as a condition of membership in the union; (2) a ban on the ability of unions and their members to use payroll deductions and (3) punitive disclosure and decertification rules that discourage union membership and favor public employers who oppose union representation.

**1.    Section 1 of SB 256 imposes a membership form as condition**

**of joining of a covered public sector union and modifies existing membership agreements between CWA and its members**

37.     Prior to SB 256 enactment, Fla. Stat. § 447.301 of PERA provided that "public employees shall have the right to form, join, participate in or to refrain from forming, joining, or participating in any employee organization of their own." There were no conditions imposed on the terms of such membership. Public employees and their public sector labor unions were not required to use any specific membership authorization form and were allowed to use their own membership authorization forms. There was no limitation on public employees desiring to be members of a public sector union.

38.     SB 256 eliminated the freedom of public employees and their unions to determine the terms of their association.  Instead, Section 1 of the SB 256 amended § 447.301 to add mandatory terms to a covered public sector employee's membership in a union. § 447.301 (b)(1) provides that "beginning July 1, 2023, a public employee **who desires to be a member of an employee organization** must sign and date a membership authorization form, as prescribed by the commission, with the bargaining agent." Fla Stat. § 447.301(b)(1) (emphasis added)

39.     Section 447.301(b)(2) requires that the state-mandated membership authorization form include "the name of the bargaining agent, the name of the employee, the class code and class title of the employee, the name of the public employer and employing agency, if applicable, the amount of the initiation fee and

12

other monthly dues which the member must pay, and the name and total amount of salary, allowances, other direct or indirect disbursements, including reimbursement, paid to each of the five highest compensated officers and employees of the employee organization disclosed under § 447.305(2)(c)."

40.    Section 447.301(b)(3) provides that the membership form must contain the following statement in 14-point type:

> "The State of Florida is a right-to-work- state. Membership or non-membership in a labor union is not required as a condition of employment and union membership and payment of union dues and assessments are voluntary. Each person has the right to join and pay dues to a labor union or to refrain from joining and paying dues to a labor union. No employee may be discriminated against in any manner for joining and financially supporting a labor union or for refusing to join or financially support a labor union.

As discussed below, PERC's proposed regulations implementing §447.301(b)(1) subject a labor union that fails to secure from all current and future members the state mandated membership authorization form (which must include the "right to work" statement) to loss of certification.  The loss of certification also impacts public employees who lose the benefit of collectively bargaining with their employers.

41.    Employees, including the individual Plaintiffs, who desire to be a member of a union or to remain a union member must submit the state-mandated membership form as prescribed by PERC regulations.

42.    On or about June 5 and 8, 2023, PERC issued proposed regulations implementing SB 256 and/or drafts of the "Preliminary Text" of proposals for implementing SB 256.  PERC's proposed rules codifying Section 1 will be codified at 60CC-1.102 thru 1.104.

43.    The proposed regulations require that all members (both new and current) must submit a membership authorization form approved by PERC. The membership forms that CWA used prior to enactment of SB 256 are rendered void. Employees desiring to join or remain a member of CWA must execute the state mandated and officially approved form by the "first renewal of registration occurring on or after October 1, 2023." [*See*, Rule 60CC-1.103(2)]

44.     PERC will not accept a membership authorization form that does not conform to PERC regulations. [*See*, Rule 60CC-1.101(2)]  Thus, the form that is incorporated into the CBA will not be accepted because it does not include the statutory language outlined above.

45.    PERC's proposed regulations implementing Section 1 also indicate that a union's failure to collect and maintain the state mandated membership form for all its members will constitute an unfair labor practice and subject the Union to an enforcement action.

46.    Plaintiff Owens refuses to the sign the mandated membership authorization form as a condition of remaining a member of  CWA and Local 3181.

He objects to being compelled to sign a form that in his view seeks to undermine his labor union and that includes a statement of Florida's "right to work" law. Owens objects to the term "right to work" because he does not believe that Florida statute has anything to do with the "right to work", but instead is designed to injure labor unions. Owen however desires to remain a member of the union and to have CWA represent him.

47.     Plaintiff Warme refuses to the sign the mandated membership authorization form as a condition of remaining a member of CWA and Local 3181. He objects to being compelled to sign a form that in his view seeks to undermine his labor union and that includes a statement of Florida's "right to work" law. Warme objects to the term "right to work" because he does not believe that Florida statute has anything to do with the "right to work", but instead is designed to injure labor unions. Warme however desires to remain a member of the union and to have CWA represent him.

48.    CWA objects to the use of the term "right to work" on its membership authorization form.  The term does not appear in CWA's current membership authorization form and it is not a term it would use unless compelled to do so. CWA opposes "right to work" legislation as antithetical to its mission as a labor organization.

49.     The term "right to work" is a controversial ideological slogan of persons, businesses, politicians and government official opposed to the collective bargaining and to the labor movement.   It is  used by union opponents as a short-hand for "anti-union" or "union free" environment.

50.     To implement the amended Fla. Stat. 447.301, PERC has promulgated a membership authorization form. The membership form requires disclosure of all compensation direct or indirect of the five highest compensated individuals without any indication of the individual's role and responsibilities in the union. The only purpose for such selective disclosure on the membership form is to discourage employees from joining the union.

51.     Public sector unions representing law enforcement employees and firefighters are not required to use the state mandated membership forms. These exempted unions may continue to use the membership form that their union and members approved.

52.     Employees working in law enforcement or in fire departments and who desire to join a public sector union are not required to sign the state-mandated membership authorization form.  Public sector unions representing law enforcement and/or fire department employees are not subject to enforcement actions for failure to secure and maintain the state-mandated membership form from all members.

**2.     Section 3 of SB 256 prohibits public employers from allowing employees to authorize payroll deduction of union dues and forwarding such dues to their unions.**

53.     Section 3 of SB 256 amended Fla. Stat. § 447.303 to provide that "an employee organization that has been certified as a bargaining agent may not have its dues and uniform assessment deducted and collected by the employer from the salaries of those employees in the unit."

54.     Section 3 of SB 256 amended Fla Stat. § 447.303 to provide that "an employee organization that has been certified as a bargaining agent to represent law enforcement officers, correctional officers or correctional probation officers as those terms are defined in § 943.10(1), (2) or (3), respectively, or firefighters as defined in § 633.102 had the right to have its dues and uniform assessments deducted and collected by the employer from the salaries or those employees who authorize the deduction and collection of said dues and uniform assessments."

55.     Fla Stat. § 112.171(1) provides in relevant part that

The counties, municipalities, and special districts of the state and the departments, agencies, bureaus, commissions, and officers thereof are authorized and permitted in their sole discretion to make deductions from the salary or wage of any employee or employees in such amount as shall be authorized and requested by such employee or employees and for such purpose as shall be authorized and requested by such employee or employees and shall pay such sums so deducted as directed by such employee or employees.

56.     Under § 112.171(1) public employees are currently allowed to request voluntary payroll deductions for personal, charitable and/or political action

committees. Upon information and belief, public employers have agreed to make payroll deductions and remit the sums deducted to charitable, political action committees and/or for other personal reasons.

57.    Section 3 of SB 256 singles out union dues and precludes public employers from agreeing to make and remit such dues as directed by employees.

58.    The sponsor of SB 256 State Senator Ingoglia stated his ideological opposition to payroll deductions of union dues when the bill was under consideration.  Senator Ingoglia stated in a March 2023 committee hearing on SB 256 that "We don't think that government should be collecting the dues and dispersing the dues."

59.    In May 2023, Governor DeSantis expressed a similar ideological opposition to remitting union dues: "That's not appropriate to have automatic deductions." "If you want to do it, you can write a check and hand it to them. What this does is relieve the pressure off the individual teacher or employee."

60.    The County, exercising discretion granted under §112.171, agreed to make payroll deduction of dues available to employees covered under both the CBA and to remit such dues to  CWA.

61.    As a result of the amendment to Fla. Stat. §447.303, Palm Beach County has discontinued payroll deduction of union dues. The County does continue

employee payroll deduction for other non-union organizations and/or considers employee requests for payroll deduction.

62.   Plaintiff Owens desires to continue payroll deduction of union dues.

63.   Plaintiff Warme desires to continue payroll deduction of union dues.

64.   SB 256 compels the County to discriminate against Owens and Warme (along with the other members of the bargaining unit) on account of their Union activity by depriving them of the right to support their Union through dues deduction.

**3.   Section 4 of the SB 256 imposes costly, excessive and burdensome rules and regulations on CWA and its locals.**

65.   Section 4 of SB 256 amended Fla. Stat. § 447.305 to provide, in relevant part, that effective October 1, 2023,  CWA and its locals must file an annual "audited financial statement, certified by an independent certified public accountant licensed under chapter 473 . . ."

66.   Section 4 of SB 256 amended Fla. Stat. § 447.305 to add the following reporting requirements to the application for renewal of registration:

(a)   the number of employees in the bargaining unit who are eligible for representation by the employee organization;

(b)   the number of employees in the bargaining unit who have submitted signed membership authorization forms without a subsequent revocation of such membership;

(c)     the number of employees in the bargaining unit who paid dues to the employee organization.

(d)     the number of employees in the bargaining unit who did not pay dues to the employee organization;

(e)     documentation provide by an independent certified public accountant retained by the employee organization which verifies the information regarding the number of bargaining unit employee, signed membership forms and dues paying members.

67.     The costs of obtaining a "audited financial statement" by a certified public account are substantial and in some cases a crippling financial burden.  As State Senator Gruters (a certified public account) noted during debate on SB 256, "auditing a financial report is not simple and will prove extremely costly for small unions."[1]   Senator Gruters concluded that in his opinion as a certified public accountant the only intent of such a provision is "too kill unions in Florida." *Id*.

68.     The provision requiring that a certified public accountant verify bargaining unit numbers and the number of dues paying members is not the type of work that certified public accountants perform. Nor is the type of information that requires the expertise of a certified public accountant.  The only purpose for this

---

[1]  *See,*   https://www.tallahassee.com/story/news/politics/2023/03/29/florida-gop-led-senate-puts-more-demands-on-unions-that-opposed-desantis/70059678007/.

requirement is too increase the cost associated with filing an annual application for renewal of registration.

69.    CWA has not been able to identify a certified public account with experience "verifying" the numbers and information required under § 447.303(3)(a)-(d) or a willingness to undertake such a task.

70.    Section 4 of SB 256 further amended Fla. Stat. § 447.305 to require the union to provide a copy of the application for renewal of registration to the public employer and allows the public employer or a bargaining unit employee to challenge the application for renewal of registration is either "believes that the application is inaccurate."  Such challenge triggers a mandatory review by PERC and if PERC finds that the application is inaccurate or does not comply with § 447.305 (3)-(6), the commission shall revoke the registration and certification of the employee organization.

71.    Section 4 of SB 256 amended Fla. Stat. § 447.305 to add subparagraph (6) that provides in relevant part that "an employee organization that had less than 60 percent of the employees eligible for representation in the bargaining unit pay dues [hereinafter the "60 percent dues paying" provision] during its last registration period must petition the commission under § 447.307(2) and (3) for recertification as the exclusive representative of all employees in the bargaining unit within 1 month after the date on which the employee organization applies for renewal of registration.

. . The certification of an employee organization that does not comply with this section is revoked."

72.   A petition for recertification under § 447.307(2) and (3) requires the union and the public employer to bear the costs of the election or a rerun if necessary. Under §447.307(3)(b), PERC shall certify the employee organization as the exclusive bargaining representative if a majority of the employees voting in the election selected the union as their representative.  Thus, a simple majority recertifies the union without regard to whether they are dues paying members or not. Yet to retain certification, Section 4 of SB 256 requires a showing that 60 percent of the bargaining unit employees are paying dues. This irrational incongruity not only violates the state's own "right to work" policy (i.e. an employee is not required to pay dues in order to benefit from collective bargaining) but it demonstrates that the intent is to disfavor and injure unions.

73.   Under the "60 percent dues paying" provision a union may not obtain recertification through voluntary recognition. Instead, the provision mandates an election as the only method of retaining certification even though a public employer may voluntarily recognize a new union pursuant to

§ 447.307(1) without an election upon satisfaction that the union has majority support.

74.    The "60 percent dues paying" provision will force unions into a repetitive cycle of elections designed to destabilize the union and public employer relationship and increase the costs of retaining certification both on the union and the public employer.

75.    Under PERC's proposed rules implementing the amended Fla. Stat. § 447.303(3)-(6), the "60 percent dues paying" requirement is only satisfied if the employee has signed and delivered to the union PERC Form 2023-1.101, which contains the "right to work" phrase  CWA and the individual plaintiffs find objectionable compelled speech.

76.    Section 4 of SB 256 exempts unions representing law enforcement officers, correctional officers or correctional probation officers and firefighters from the provisions added to the application for renewal of registration (including the verification of application information by a certified public accountant) and from the "60 percent dues paying" provision. There is no rational basis for exempting these unions from the "60 percent dues paying" provision or any other added requirements to the application for renewal of registration and yet applying the requirements to all other unions.

**D.    Plaintiffs are experiencing and will experience future harm as a result of SB 256.**

**77**.    Section 1 of SB 256 and the PERC Form 2023-1.101 that the impacted unions and members must execute, collect and maintain burden the individual

23

Plaintiffs and  CWA's First Amendment "free speech" rights because it requires them to assent to the "right to work" term that they find objectionable. Without executing this mandated form, a public employee will not be considered a member of the union.  Likewise, if  CWA refuses to use the form because it objects to the "right to work" term, it will be subject to sanctions including loss of representative status and members.

78.     Because the "60 percent dues paying" requirement is tied to use of the PERC Form 2023-1.101,  CWA (if it desires to retain its certification status) will be compelled to use and complete the form to solicit current and prospective members. It is unlikely that current and prospective members will know how to obtain the Form 2023-1.101 and/or be able to complete the "Employee Organization Information" section which requires  CWA's "PERC registration number,", the "date of last order granting registration" and the "salaries, allowances, and other direct and indirect disbursements" paid to the five most highly compensated individuals.  Thus, in order to retain its status as the employee's collective bargaining representative,  CWA is compelled as a practical matter to assist current and prospective members in completing the membership authorization form; a form that contains the slogan "right to work" which  CWA considers antithetical to its mission.

79.     Likewise, the Individual Plaintiffs who are current members of  CWA will be compelled, as a condition of remaining a member, to personally sign the

membership authorization form which includes the mandatory notice that the "State of Florida is a right-to work state."  The Individual Plaintiffs object to inclusion of the "right to work" slogan as part of their application for membership in  CWA.

80.    The state-mandated membership authorization form also requires disclosure of information that employers frequently used in anti-union campaigns to discourage support for a union. Employers in anti-union campaigns will use information about salaries and compensation of union officers to communicate the anti-union message that the union only wants dues to pay for the salaries of union employees.

81.    Form 2023-1.101's juxtaposition of membership dues with the salaries and compensation of union employees is a well-worn tactic of union busting consultants and anti-union advocacy groups.   The State has commandeered the membership application process to communicate this anti-union message. No other private association and its current or prospective members are compelled to use a state-mandated membership form designed to discourage membership in the association.

82.    Compelling unions and their members to participate in such anti-union propaganda cannot be remedied with an award of monetary damages.

83.    Section 1 of SB 256 also burdens First Amendment associational rights because it mandates the use of the state-created application form as a condition of

joining a union and remaining a union member.  Section 1 effectively nullifies the individual Plaintiff's membership in  CWA and only permits membership in  CWA if the individual Plaintiffs and any new employee signs the state mandated membership authorization form.

84.     No other private association that admits members in the State of Florida is subjected to a requirement that (1) all existing members sign a state mandated membership form to remain as members and (2) that all new members sign a state mandated membership authorization form. No other association that the United States Supreme Court has acknowledged as a First Amendment protected association (i.e., civil rights associations or religious organizations) has experienced an intrusion such as the intrusion expressed in Section 1 that the State of Florida adopted with respect to unions.

85.     In addition to the expressive harm related to use of a "membership" form that contains a statement antithetical to the union's mission, the threatened loss of representative status is a non-monetary injury. An award of monetary damages cannot compensate the Union or the individual Plaintiffs for the harm flowing from the lack of representation.

86.     Section 3 of SB 256's discriminatory prohibition of the collection of voluntary membership dues through payroll deduction will injure  CWA financially

and impair its contracts with the Defendant employer. The loss of payroll deduction will and has imposed transaction costs on CWA that are difficult to monetize.

87.    Section 3 of SB 256 also discriminatorily deprives the Plaintiffs of a benefit that the State of Florida provides to other non-union organizations.  Unlike payroll deductions for other charitable organizations or political action committees, the Plaintiffs are now forced to make alternative arrangements (with its attendant transaction costs) to pay union membership dues.

88.    Section 3 of SB 256 targets  CWA and the Plaintiffs because of the nature of their association. As public statements by the Governor and the Senate sponsor of SB 256 demonstrate, the Section 3 deprives  CWA and the Plaintiffs of a governmental benefit available to other non-union organizations on account of the nature of  CWA and Plaintiffs' association and protected advocacy.

89.    Section 4 of SB 256 imposes burdensome requirements related to audited financial disclosures and verification of membership numbers by a certified public account.

90.    Section 4 of SB 256's requirement of "audited" financial statements prepared by a certified public accountant imposes substantial costs on  CWA.  . These are costs that once paid cannot be recovered. No other organization is required to obtain and pay for a certified public account to audit the voluntary dues collected from members and the expenditures of such organization.

91.    Section 4 of SB 256 also requires a certified public accountant to "verify" membership information.  SB 256 does not set standards for "verification" of membership information. Without such guidance, securing a certified public accountant to verify membership information will prove difficult and costly.

92.    Failure to comply with the requirements of Section 4 of SB 256 will result in the revocation of CWA's registration and certification. Fla. Stat. 447.305(7) ("If the commission finds that the application is inaccurate or does not comply with this section, the commission shall revoke the registration and certification of the employee organization.")

93.    The threatened revocation of certification for non-compliance with Section 4's unlawful requirements will impair the current collective bargaining agreements between  CWA and the Defendant employers.

94.    The "60 percent dues paying" requirement to avoid a recertification election, the requirement of obtaining, distributing and filing financial reports audited by an independent certified public accountant and/or the requirement of that an independent certified public accountant "verify" certain membership information are not reasonable and necessary to serve a legitimate public interest.

95.    By adding new and costly conditions precedent to the enforceability of existing CBAs during their unexpired terms, Section 4's discriminatory disclosure and decertification rules substantially impair those CBAs.

## COUNT I

### (Section 1983 – Freedom of Association)

96.     The Plaintiffs incorporate and restate paragraphs 38 to 52.

97.     In *Roberts v. U.S. Jaycees*, the Supreme Court explained that the freedom of expressive association is instrumental to, and protective of, other constitutional rights: "[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment." 468 U.S. 609, 618, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). "The Constitution guarantees freedom of association of this kind," the Court continued, "as an indispensable means of preserving other individual liberties." *Id*.  The Eleventh Circuit has specifically held that "[t]his right to freedom of association extends to public employees being able to engage in associative activity without retaliation." *Hatcher v. Bd. of Pub. Educ. & Orphanage for Bibb Cnty.*, 809 F.2d 1546, 1558 (11th Cir. 1987).

98.     In *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460, 78 S. Ct. 1163, 1171 (1958), the Court held that "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech."

99.     The individual Plaintiffs and  CWA have formed an association for the purpose of  advancing and  advocating shared views  and  ideas regarding public

employment, the role of labor unions in our economy and society and other policies affecting the public.

**A.** **Section 1 of SB 256 Violates First and Fourteenth Amendment Rights of Freedom of Association.**

100.   As described above, Section 1 of SB 256 requires the individual Plaintiffs' to execute a membership authorization form as a condition of remaining a member of CWA.  Conditioning an individual's right to membership in a private association on the execution of a government-drafted and mandated form in the manner required by Section 1 is not a reasonable, let alone a narrowly tailored, means of advancing a compelling, substantial, or even legitimate, governmental interest.

101.   The individual Plaintiffs' do not want to sign the state-mandated authorization form as a condition of remaining members of CWA. The individual Plaintiffs' do not agree and object to the slogan "right to work" and to the general purpose of the mandated membership authorization form which they view as designed to discourage union membership.

102.   Section 1 infringes the freedom of association rights of CWA by depriving it of a core aspect of their institutional autonomy, namely, its autonomy over the membership admissions process.  CWA's current authorization form does not include the slogan "right to work."  That slogan is antithetical to the mission of CWA.  Additionally, the current authorization form does not include the information

about salaries of the five highest paid employees of CWA which is juxtapose with membership dues.  SB 256 already requires the disclosure of financial information. The state mandated membership authorization form is designed to discourage employees from associating with CWA by juxtaposing membership dues with the compensation of certain union employees/officers.

103.   Depriving voluntary private associations of their First Amendment right to self-determination over their membership admissions process in the manner required by Section 1 is not a reasonable – let alone a narrowly tailored – means of advancing a compelling, substantial, or even legitimate, governmental interest.

104.   Section 1 of SB 256, therefore, violates the Plaintiffs' First Amendment right and/or Fourteenth Amendment substantive Due Process right to freely associate on mutual and voluntary terms for purposes of advocating and advancing shared beliefs and goals.

**B.     Section 3 of SB 256 Violates the Plaintiffs' First and Fourteenth Amendment Rights of Freedom of Association.**

105.   As described above in paragraphs 53 and 54 Section 3 of SB 256 deprived the Plaintiffs of the benefit of payroll deduction of union dues.  The County has implemented this provision and stopped payroll deductions of union dues.

106.   The elimination of payroll deduction of union dues targets CWA and Plaintiffs because of the nature of their association. Section 3 of SB 256 prohibits

Plaintiffs' Employers from allowing Plaintiffs to authorize payroll deduction solely because of Plaintiffs membership in and association with CWA.

107.   The denial of the benefit of payroll deduction of union dues is retaliation because of the Plaintiffs' associative activity with CWA.

108.   The prohibition of Union dues deduction discriminates against CWA and the Individual Plaintiffs on account of their union support.

109.   Not allowing the County to deduct Union dues for employees other first responders (i.e., exempted employees and Unions) is irrational and not related to a legitimate governmental interest. Indeed, discriminating against Unions and denying them the benefit of dues deduction conflicts with the State of Florida's constitution which protects an employee's right to join and support a union for purposes of collective bargaining.

110.   Accordingly, Section 3 of SB 256 violates the Plaintiffs' First Amendment right and/or Fourteenth Amendment substantive Due Process right to freely associate on mutual and voluntary terms for purposes of advocating and advancing shared beliefs and goals without retaliation.

**C.    Section 4 of SB 256 Violates the Plaintiffs' First and Fourteenth Amendment Rights of Freedom of Association.**

111.   As described above in paragraphs 65 through 76, Section 4 of SB 256 amended Fla. Stat. § 447-305 to impose burdensome and unnecessary requirements in order to maintain and renew certification. The "60 percent dues paying"

requirement, the "audited" financial reports by an independent certified public accountant and/or the verification of membership information required on the renewal application by a certified public accountant impose significant and substantial costs of CWA.  The verification of membership information may not be a condition that  CWA can satisfy.

112.   These requirements were imposed on  CWA and its membership because of the nature of their association and the activities undertaken by their association.

113.   As Senator Gruters observed, Section 4 of SB 256's requirements for renewal of certification status were motivated by a desire to weaken and/or stamp out the Plaintiffs' association.

114.   These requirements fail to advance any substantial or compelling governmental interest, are not narrowly tailored or reasonably related to any such interest, and substantially burden the Plaintiffs' right to freely associate. Indeed, the provisions are designed to interfere with the Florida State Constitutional right of public employees to join and support labor unions for the purposes of collective bargaining.

115.   Accordingly, Section 4 of SB 256 violates the Plaintiffs' First Amendment right and/or Fourteenth Amendment substantive Due Process right to

freely associate on mutual and voluntary terms for purposes of advocating and advancing shared beliefs and goals.

## COUNT II

### (Section 1983 – Freedom of Speech)

116.    The Plaintiffs incorporate by reference paragraphs 38 through 52.

117.    The First Amendment to the United States Constitution provides that the government "shall make no law… abridging the freedom of speech." U.S. Const. amend. I.  The First Amendment prohibits the State of Florida from compelling the Plaintiffs' to disseminate or promote a message that conflicts with their core mission. Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason, the landmark free speech cases said that a law commanding "involuntary affirmation" of objected-to beliefs would require "even more immediate and urgent grounds" than a law demanding silence. *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2464 (2018).

118.    The State of Florida may not deny an organization or its members a benefit on a basis that infringes constitutionally protected interests--especially, the interest in free speech.  *Perry v. Sindermann*, 408 U.S. 593 (1972). Though the government enjoys discretion on granting or denying a public benefit, it may not do so because of an organization or individual's beliefs and views. "For if the government could deny a benefit to a person because of his constitutionally protected

34

speech or associations, his exercise of those freedoms would in effect be penalized and inhibited." *Rutan v. Republican Party*, 497 U.S. 62, 86, 110 S. Ct. 2729, 2743 (1990) (Justice Stevens concurrence)

**A.    Section 1 of SB 256 unconstitutionally compels use and/or dissemination of the slogan "right to work" on the state's mandated membership authorization form.**

119.   Section 1 of SB 256 amended Fla. Stat. § 447.301 to require the individual Plaintiffs desired to be a member to execute a membership authorization form that includes the statement "The State of Florida is a right-to-work state."

120.   The individual Plaintiffs view that slogan "right to work" as an anti-union slogan.  The individual Plaintiffs oppose the concept of "right-to-work" and object to signing a membership form that includes this slogan in the mandatory notice section of the form.    CWA's membership application (which the parties incorporated into the CBA) makes no reference to the "right to work."

121.   The individual Plaintiffs do not want to be compelled to sign a form that contains the slogan "right-to-work" because they reasonably consider doing so as an acknowledgment or endorsement of the slogan.   Indeed, the individual Plaintiffs view the inclusion of the slogan "right-to-work" on a membership form for an organization that they are voluntarily joining as a proverbial "thumb in the eye."

122.   Section 1 of SB 256 compels  CWA to use the state-mandated membership authorization form.  CWA does not desire to use a form that includes the slogan "right-to-work" as a mandatory disclosure.  The slogan "right-to-work" is an anti-union slogan and antithetical to  CWA's mission.

123.   Refusal by CWA to use the state-mandated form would result in losing its certification as the bargaining representative of its members and unit employees. CWA's mission includes representing members and unit employees with respect to matters affecting their employment. Thus, to continue its mission as a union,  CWA is forced into using a form that contains the anti-union slogan "right-to-work."

124.   Accordingly, Section 1 of SB 256 violates the Plaintiffs' First Amendment right to not be compelled to disseminate or acknowledge a government mandated message that they oppose and is antithetical to their values and beliefs and to have this slogan included in the membership authorization form.

**B.     Section 3 of SB 256 violates the Plaintiffs First Amendment rights.**

125.   Section 3 of SB 356 amended Fla. Stat. § 447.303 to prohibit employer Defendants from deducting and collecting union dues from the individual Plaintiffs' salaries even though the individual Plaintiffs' have voluntarily authorized and requested that their employers provide such service.

126.   The State of Florida has withheld this service because the Plaintiffs' are members of  CWA and because  CWA is a labor union.  The State of Florida,

however, allows the individual Plaintiffs' to authorize payroll deductions for other organizations as directed by the individual Plaintiffs.

127. Section 3 of SB 256 distinguishes different speakers and deprives CWA and its member the same service or benefit available to other speakers and organizations on account of CWA's beliefs, views and advocacy regarding matters affecting the employment of its members.

128. The Governor of the State of Florida and the Senate sponsor of SB 256 have expressed their opposition to labor unions and the labor movement in general.

129. Accordingly, Section 3 of SB 256 violates the Plaintiffs' First Amendment rights because they are being punished for their beliefs, views and advocacy on behalf of their public sector employees.

**C. Section 4 of SB 256 violates Plaintiffs' First Amendment rights because it imposes burdensome and unnecessary requirements designed to harm labor unions because of the beliefs and views they advocate.**

130. Section 4 of SB 256 amended Fla. Stat. §447.305 to impose burdensome, costly and unnecessary requirements as a condition of retaining certification.

131. Section 4 subjects CWA to immediate decertification if it fail to comply with any of the following new obligations: annually disclosing audited financial statements; annually disclosing accountant-certified figures showing the number of bargaining unit employees who are and are not dues-paying union

members; and undergoing an election to determine whether the it can continue to serve in its role as collective bargaining representative if its disclosures show that fewer than 60% of the employees it represents pay dues to the union.

132.   The requirement to retain an independent certified public account to audit financial records and reports and to verify membership information included on an application to renew registration was designed to in the words of Senator Gruter "kill unions" in the State of Florida.

133.   Section 4 targets CWA and its members because of the pro-union views and beliefs that they advocate. Section 4 aims to impose substantial and burdensome costs on  CWA because it is a labor union.

134.    Imposing substantial and burdensome costs on  CWA in order to renew its certification harms the individual Plaintiffs because their voluntary dues are diverted to comply with these requirements and not used to advocate the beliefs and views of their union with respect to their employment with the defendant Employer.

135.   Accordingly, Section 4 of SB 256 violates the Plaintiffs' First Amendment rights because they are being punished for their beliefs, views and advocacy on behalf of their public sector employees.

## COUNT III

### (Section 1983 – Equal Protection)

136.   As noted above, SB 256 exempts similarly situated public sectors unions from (i) amendments to Fla. Stat. §447.301 that mandates the use of a state created membership authorization form, (ii) amendments to Fla. Stat. § 447.303 that prohibit public employers from deducting and collecting union dues and (iii) from amendments that added § 447.305(3)-(8) which imposed new reporting requirements and the "60 percent dues paying" requirement.

137.   The differentiation between favored and disfavored unions does not advance any compelling, substantial, or even legitimate government interest and is not narrowly tailored or rationally related to advancing any such interest. It therefore fails any level equal protection scrutiny that may be applicable. The provisions of SB 256 challenged in paragraph 136 are inconsistent with the State of Florida's Constitution and any interest in providing public employees with a right not to join or support a union is already protected in both the Florida Constitution and the CBA between the Union and the County.

138.   Accordingly, Sections 1, 3 and 4 of SB 256 violate the Plaintiffs' Equal Protection guarantee because they are being punished for their beliefs, views and advocacy on behalf of their public sector employees.   And because they draw distinctions between favored and unfavored unions that does not advance any compelling, substantial or legitimate governmental interest.

## COUNT IV

### (Section 1983 – Violation of Article I, Section 10's Contract Clause)

139.    Plaintiff CWA incorporates by reference paragraphs 18 through 28.

140.    CWA has a valid, binding, active contract with the County containing numerous provisions that establish the wages, benefits, and other valuable terms and conditions of employment for the employees represented by the respective unions. The CBA does not expire until September 30, 2024 and is automatically renewed unless the party gives notice of an intent to seek modifications to the CBA.

141.    The collective bargaining agreements between CWA and the County includes an agreement for payroll deduction of membership dues. The CBA also specifies that membership application form and the dues checkoff authorization form.

142.    Section 1's mandated membership form impairs the contract between CWA and the County because it conflicts with the agreed upon form incorporated into the CBA.

143.    Section 3's ban on payroll deduction of membership dues impairs the contract between CWA and the County.

144.    CWA no longer receives deducted dues from the County and/or any other public employer in the State of Florida.  As result of Section 3 of SB 256, CWA and its local affiliates in the State of Florida have suffered economic loss.

145.   By conditioning the continuing enforceability of CWA's CBAs on compliance with new and onerous conditions, Section 4 of SB 256 substantially impairs the contractual rights of CWA in violation of Article I, Section 10, Clause 1 of the United States Constitution. The provision changes permissions of and obligations toward CWA unions and its members on which they have relied.

146.   The contract impairments effectuate by Sections 1, 3 and 4 of SB 256 are not reasonable or necessary to advancing an important public purpose.

## PRAYER FOR RELIEF

The Plaintiffs respectfully request that the Court enter an order providing the following relief:

(a)   a declaration that Fla. Stat. § 447.301's mandated membership authorization form violates the Plaintiff's First and Fourteenth Amendments' right to freely associate, their First Amendment right to engage in free and not compelled speech and their rights to due process and equal protection;

(b)   a declaration that Fla. Stat. § 447.303 impairs the contractual rights of CWA in violation of Article I, Section 10, Clause 1 of the United States Constitution and also violates the Plaintiffs' rights to freedom of speech and association under the First Amendment and to equal protection of the laws under the Fourteenth Amendment of the United States Constitution;

(c)      a declaration that Fla. Stat. § 447.305 impairs the contractual rights of CWA in violation of Article I, Section 10, Clause 1 of the United States Constitution and also violates the Plaintiffs' rights to freedom of speech and association under the First Amendment and to equal protection of the laws under the Fourteenth Amendment of the United States Constitution;

(d)      preliminary and permanent orders enjoining the PERC defendants, their successors, and all those acting in concert with them or at their direction from implementing or enforcing the provisions of SB 256 herein, or from enforcing PERA § 447.501(2)(b) where the action attempted by the employee organization, representative, agent or member of the employee organization is an attempt to request, persuade, or induce a public employer to provide payroll deduction of dues in favor of the employee organization under circumstances where a favored employee organization would be permitted to make such an attempt;

(e) preliminary and permanent orders barring the County and all those acting in concert with it or at its direction, from invoking Section 3 as a defense in any forum, including without limitation in any grievance meeting or arbitration, as a basis for refusing to honor the dues-deduction provisions in its CBAs.

(f)      An award of attorneys' fees and costs to the Plaintiffs, pursuant to 42 U.S.C. § 1988(b); and

(h)     such other and further relief as the court may find appropriate to remedy

the violations of Plaintiffs' constitutional rights.

/s/ *Nicolas Stanojevich*
Nicolas Stanojevich
Fla. Bar 0119400
Counsel for Plaintiffs

Quinn, Connor, Weaver
Davies & Rouco, LLP
4100 Perimeter Park South
Atlanta, GA 30341
404-299-1211
nstanojevich@qcwdr.com

**OF COUNSEL:**

Robert Weaver (*pro hac vice to be filed*)
CWA District 3 Counsel
Communications Workers of America, AFL-CIO, CLC
4100 Perimeter Park South
Atlanta, GA 30341
404-296-5553 ext. 230
rweaver@cwa-union.org

George Davies (*pro hac vice to be filed*)
Richard Rouco (*pro hac vice to be filed*)
Quinn, Connor, Weaver,
Davies & Rouco
2 -20th Street North
Suite 930
Birmingham, AL 35203
205-870-9989
gdavies@qcwdr.com
rrouco@qcwdr.com